**Ezra Augustus STROUPE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 87–1061–Civ–T–13B.**

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 11, 1988.

Malka Isaak, Tampa, Fla., for appellant.

Lynne England, Asst. U.S. Atty., Tampa, Fla., Richard Mitchell, Dept. of Justice, Washington, D.C., for appellee.

### ORDER

GEORGE C. CARR, District Judge.

This case comes on appeal from the Bankruptcy Court for the Middle District of Florida pursuant to 28 U.S.C. § 158. The appellant/debtor presents one issue for appeal: whether a $4,652,000.00 non-recourse note, given as part consideration for a $5,700,000.00 purchase price patent, should be treated as bona fide indebtedness for Federal Income Tax purposes.

In 1976, Cambridge Research and Development Group (Cambridge) acquired a patent and all rights thereunder to a firefighting device called the "waterdrill". Cambridge then located the appellant and convinced him to develop the patent with Cambridge and to assemble a group of investors that would later join the appellant's partnership.

The appellant then formed American Fire and Industrial Products Company (AFIPC), and began serving as its general and managing partner. At least six (6) persons were partners in both Cambridge and AFIPC, including Lawrence M. Sherman, the chief executive of Cambridge Research, and Marvin Rosenberg, Cambridge's general counsel.

Once established, AFIPC purchased the patent from Cambridge for a purported sales price of $5,700,000.00. The purchase agreement provided that AFIPC would pay Cambridge $1,048,000.00 in cash and would issue a non-recourse note in the amount of $4,652,000.00, to be paid out of the receipts of a successful undertaking. The note became due on January 2, 1984. The agreement further provided for a $50,000.00 payment in consideration for a one year extension should the debtor desire to extend the time for repayment; and for an 11.5% annual interest accruing under the terms of the note. None of the partners were personally liable on the note. Upon default, Cambridge's primary recourse was to foreclose its security interest upon the patent, AFIPC's main, if not sole, asset.[1]

By instrument dated December 15, 1983, the note was extended for four years until January 2, 1988. At the time of the bankruptcy proceeding, AFIPC had not paid consideration for the extension; nor had it paid anything on the principal of the note; nor had it paid anything on the 11.5% interest purportedly accruing on the note. However, out of a total cash investment of

---

1. The appellant claims that the creditor had the right to foreclose on "all of AFIPC's assets."

The appellee claims the water-drill was AFIPC's sole asset.

$3.5 million, AFIPC partners were able to report ordinary losses in excess of $13,600,-000.00. The appellant's $75,000.00 investment reaped ordinary losses of nearly $820,000.00 over a ten year period.

The Bankruptcy Court found that although the stated purchase price of the patent ($5,700,000.00) exceeded the cash paid for it ($1,048,000.00), the patent's fair market value did not exceed the cash paid, and that the nonrecourse note representing the difference between the agreed upon price and the cash paid did not represent a fixed, enforceable obligation and should be disregarded for income tax purposes. It is from these findings that the debtor appeals.

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "findings of fact shall not be set aside on appeal unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." In *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), the Supreme Court stated that a finding is "clearly erroneous" when, although there may be evidence to support it, the reviewing Court is left "with the definite and firm conviction that a mistake has been committed." *Cited* in *In re Perimeter Investment Assoc., Ltd.*, 616 F.2d 150 (11th Cir. 1980). This court is not left with the definite and firm conviction that a mistake was made in the instant case.

The Bankruptcy Court noted that, while on its *face*, the nonrecourse note evidenced a legitimate obligation due to Cambridge, it did not, in fact, represent a fixed, enforceable obligation of AFIPC. The appellant's brief refutes this finding by referring the court, once again, to the *face* of the note, and specifically to paragraph 6. Paragraph 6 purports to secure payment of the note by subjecting all of AFIPC's assets (the sum total of which are in dispute) to a security interest in Cambridge. This court finds appellant's reference irrelevant in light of the fact that the Bankruptcy Court did not question what the note purported on its face.

The Bankruptcy Court questioned the discrepancy between what the note purported on its face and what it amounted to in practice: a note agreement between two entities, compromised, at least to some extent, of identical parties, which included no obligation to repay the note except out of revenues derived from the successful marketing of one device; and for which nothing had been paid on the principal, nothing had been paid on the interest; and under which the noteholder had agreed to a four-year extension of the due date without receiving any of the consideration provided for in the note itself. Those findings also render irrelevant the appellant's reference to *Commissioner v. Tufts*, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1982). The holding in *Tufts* was predicated on the assumption that the debtor would repay the creditor in full. The instant court found there was no true debt, no true obligation of the debtor to repay the creditor in full.

Although the appellant offers a number of conclusions, it fails to present any justification upon which this court can rule the Bankruptcy Court's findings "clearly erroneous." The appellant merely asserts that:

1. the face of the note shows it to be enforceable;

2. AFIPC owns assets other than the patent;

3. Cambridge waived the $50,000.00 consideration for extension in "the hope that [AFIPC's] fortunes would improve in the future;"

4. although there was an "overlapping" of partners, it was not too extensive; and,

5. that the patent sale was an arms' length transaction.

From this the appellant concludes that "the Bankruptcy Court's error . . . constitutes an astounding and extremely significant misinterpretation of the record which necessarily casts doubt on that Court's credibility . . . and indicates at the very best a lack of care in preparation of the Court's Order and at worst a failure to properly review the record . . ." The appellant claims the Bankruptcy Court's analysis is "clearly

wrong" and prays this court give the record *de novo* review.

Yet the plaintiff's assertions involve questions of fact, the determinations of which are primarily entrusted to the Bankruptcy Court. The record in this case provides more than enough detail to insulate that Court's findings from reversal under a "clearly erroneous" standard of review. Under the circumstances, the court is hardly inclined to overturn them.

The appellant's second main contention is that the Bankruptcy Court erred in concluding that the patent's fair market value did not exceed the amount of cash paid for it. Appellant alleges that the Court's misapplication of the fair market value formula constitutes an error of law and is therefore reviewable *de novo* in this court. Appellant provides the proper formula in its brief:

> Fair market value has been defined as the price at which a willing buyer will purchase a property from a willing seller, when neither party is acting under compulsion and both parties are fully informed of all the relevant facts...This definition assumes that the buyer and the seller will not be the same individual or entity and will have adverse economic interests.* * *When two parties dealing at arm's length assign a certain value to property being sold, and when that value has economic significance to each of the parties, the value assigned by the parties is very persuasive evidence of its fair market value ...This evidence will be determinative of the actual fair market value in the absence of competent evidence to overcome it. *Narver v. Commissioner*, 75 T.C. 53, 96–7 (1980), *aff'd* 670 F.2d 855 (9th Cir.1982).

Appellant asserts that the IRS has no competent evidence to overcome the "very lengthy arm's bargaining" between Cambridge and AFIPC and concludes that "[t]here is simply no doubt that they did deal at arm's length and had adverse economic interests."

Nonetheless, the record indicates, and the Bankruptcy Court found, significant evidence to draw into question the "arm's length" between Cambridge and AFIPC, to wit: whether the parties can properly be called "willing buyers" and "willing sellers;" whether the two were the same individuals or entities; whether they had adverse economic interests; whether there was any absolute liability to repay; whether there were ever any real obligations exchanged between the two, etc., all of which are again questions of fact the resolutions of which this court has not found reason to overturn.

*Gibson Products Co. v. United States of America*, 637 F.2d 1041 (5th Cir.1981) involved an accrued expense deduction linked to the success of certain (wildcat) oil and gas drilling ventures. Payment of these expenses was secured only by nonrecourse notes collateralized by the underlying oil and gas leases making that case strongly analogous to the instant one. In *Gibson*, the Fifth Circuit concluded that the nonrecourse note was not a true loan since:

> In a true lending transaction, the borrower normally possesses assets nearly equal or greater in value than the amount of indebtedness, whether or not those assets are hypothecated to secure the debt ...Moreover, in a true lending transaction, there exists the reasonable likelihood that the lender will be repaid in light of all reasonably foreseeable risks. In other words, there must be a 'reasonable basis for the prediction that the ability of the borrower to repay will not be wholly or substantially contingent upon the success or failure of the business venture.' [citations omitted].

The relevance of *Gibson* is clear, yet the appellant takes issue with it primarily for its instruction that property secured by a nonrecourse note should have "an objectively ascertainable present value." The appellant's position is that "no such animal exists;" the value of anything is simply what one with the means to pay for it is willing to pay for it. There is nothing "objective" about it. The appellant's assertion is correct but misguided. It is precisely because the court cannot assign an objective value that the fair market value test directs the court to examine the factual

setting in which the sale or transaction takes place. It was the facts that surrounded the Cambridge/AFIPC transaction and those that followed from that transaction which led the Bankruptcy Court to its conclusion: that the patent's value was inflated. The court did not get there by arbitrarily assigning an "objective value" and then finding it to be less than that stated by the purchaser. Thus the court's finding was factual, not legal.

Objectivity is measured by the length between transacting arms. Where there is little or no length, there is little or no room for objectivity, and thus adequate grounds for the court to call the transaction into question. That call is a factual one, not a legal one, and as such it rests within the sound discretion of the Bankruptcy Court. That Court has not abused its discretion in this case.

For the reasons stated herein, the decision of the Bankruptcy Court is AFFIRMED.

DONE AND ORDERED.